# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

TED ANTHONY PREVATTE,    :

                      :

       Petitioner,    : PRISONER HABEAS CORPUS

                      : 28 U.S.C. § 2254

     v.              :

                      : CIVIL ACTION NO.

JAMES FRENCH, Warden;    : 1:02-CV-1709-RWS

THURBERT E. BAKER, Attorney    :

General,    :

                      :

       Respondents.    :

## ORDER

By Order dated November 17, 2006, this Court denied Petitioner Ted

Anthony Prevatte's Petition for Writ of Habeas Corpus.  (See Order of Nov. 17,

2006 [38] [hereinafter "Order"].)  Petitioner now moves this Court to alter or

amend its judgment pursuant to Federal Rule of Civil Procedure 59(e).  (See

First Motion to Alter or Amend the Judgment [41] [hereinafter "Motion"].)  For

the reasons that follow, the Court declines to reconsider its prior decision, and

therefore denies Petitioner's Motion.

**Discussion**

## I.       Legal Standard

Petitioner moves this Court pursuant to Federal Rules of Civil Procedure

52 and 59(e) to alter or amend its judgment denying his Petition for Writ of

Habeas Corpus.  Rule 59(e) of the Federal Rules of Civil Procedure authorizes a

motion to alter or amend a judgment after its entry.  The text of Rule 59(e) does

not set forth specific grounds for relief, and the decision to alter or amend

judgment is committed to the sound discretion of the district court.  <u>Am. Home

Assur. Co. v. Glenn Estess & Assocs., Inc.</u>, 763 F.2d 1237, 1238-39 (11th Cir.

1985).  That said, Rule 59(e) has been interpreted to allow for relief in four

situations: (1) where the judgment was based upon manifest errors of law or

fact; (2) where reconsideration is warranted in light of newly discovered or

previously unavailable evidence; (3) where the judgment would result in

manifest injustice; and (4) where the judgment is called into question by an

intervening change in the controlling law.  11 Charles Alan Wright, Arthur R.

Miller & Mary Kay Kane, Federal Practice & Procedure § 2810.1, at 124-27 (2d

ed. 1995).  Beyond those four specified circumstances, however, Rule 59(e)'s

use is limited.  In particular, a Rule 59(e) motion may not be used to simply

AO 72A
(Rev.8/82)

relitigate old matters or to present arguments or evidence that could have been raised prior to judgment.  Michael Linet, Inc. v. Village of Wellington, Fla., 408 F.3d 757, 763 (11th Cir. 2005).

In his Motion, Petitioner challenges the Court's conclusion that he was not entitled to relief on (1) his fair cross-section claim under Taylor v. Louisiana,  419 U.S. 522, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975) (per curiam); (2) his ineffective assistance of counsel claims predicated upon his attorney's failure to seek a continuance and their failure to interview Ms. Linda Hamrick, a witness for the State; and (3) his claim for relief under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).  Petitioner argues that "[t]he Court's Order denying relief . . . contains errors which, if corrected, will compel a determination that petitioner is entitled to relief. . . ."  (Id. at 1.)  For the reasons that follow, the Court disagrees and declines to alter its prior judgment.

## II.    Taylor Claim

Petitioner requests that the Court reconsider its decision to deny his fair cross-section claim for relief under Taylor v. Louisiana, 419 U.S. 522, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975).  In particular, Petitioner "objects to the Court's

3

conclusion that allowing him the retroactive benefit of <u>Taylor v. Louisiana</u>, 419

U.S. 522 (1975) would be contrary to the rationale of <u>Griffith v. Kentucky</u>, 479

U.S. 314 (1987)." (Motion at 2.)  Petitioner's objection fails to convince the

Court that it should reconsider its resolution of Petitioner's <u>Taylor</u> claim.

While the Court stands by its observation that granting Petitioner relief

on this claim would "surely 'violate[] the principle of treating similarly situated

defendants the same,' " <u>Prevatte v. French</u>, 459 F. Supp. 2d 1305, 1327 (N.D.

Ga. 2006), Petitioner's "objection" fails to address the basis for the Court's

decision and ignores the alternative holdings of the Court.  In denying Petitioner

relief, the Court held first that <u>Daniel v. Louisiana</u>, 420 U.S. 31, 95 S. Ct. 704,

42 L. Ed. 2d 790 (1975) controls the retroactivity of <u>Taylor</u>, and that under

<u>Daniel</u>, Petitioner is not entitled to the benefit of the <u>Taylor</u> decision.  <u>Prevatte</u>,

459 F. Supp. 2d at 1322-23.  The Court then went on to hold that even assuming

Petitioner is correct that <u>Griffith</u> implicitly overruled <u>Daniel</u>—a proposition

squarely foreclosed by numerous Supreme Court and Eleventh Circuit

cases—then <u>Teague v. Lane</u>, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334

(1989), bars relief.  <u>Prevatte</u>, 459 F. Supp. 2d at 1323-27.  As Petitioner offers

no argument directed at either basis for the Court's decision to deny relief on

his <u>Taylor</u> claim, his Motion as it relates to that claim is denied.

## II.      Ineffective Assistance of Counsel

Petitioner challenges two aspects of the Court's decision to deny relief on

his claim based upon the ineffective assistance of counsel: (1) that counsel's

failure to seek a continuance was not objectively unreasonable, and (2) that

counsel's failure to interview one of the state's witnesses was neither

objectively unreasonable nor prejudicial.  As much of Petitioner's argument on

these points merely rehashes arguments previously raised and rejected, the

Court will not dwell extensively on these issues.  <u>See</u> <u>Mincey v. Head</u>, 206 F.3d

1106, 1137 (11th Cir. 2000) ("The function of a motion to alter or amend a

judgment is not to serve as a vehicle to relitigate old matters or present the case

under a new legal theory or to give the moving party another 'bite at the apple'

by permitting the arguing of issues and procedures that could and should have

been raised prior to judgment." (internal quotations and alterations omitted)).

That said, the Court takes this opportunity to address several of the points

raised.

5

**A.**     **Failure to Seek a Continuance**

Petitioner challenges the Court's decision insofar as it concluded that counsel's failure to seek a continuance was not objectively unreasonable.  In this respect, Petitioner asserts that, in denying relief, "[t]he Court [found] that the pro se speedy trial demand filed by Mr. Prevatte prior to appointment of counsel precludes a collateral claim of ineffective assistance of counsel." (Motion at 5.)  Relying on this "finding," Petitioner argues that the Court impermissibly required Petitioner to assert his right to speedy trial at the expense of his right to effective assistance of counsel.  (Id. at 6.)

Contrary to Petitioner's characterization of the Court's decision, it neither found nor held that the speedy trial demand Petitioner filed precluded an ineffective assistance claim based upon counsel's failure to seek a continuance. Rather, the Court merely recognized the rather unremarkable proposition that because

> "[a] defendant's Sixth Amendment rights are his alone, . . . [and b]ecause . . . a defendant must have . . . broad power to dictate the manner in which he is tried, it follows that, in evaluating strategic choices of trial counsel, [the Court] must give great deference to choices which are made under the explicit direction of the client."

6

Prevatte, 459 F. Supp. 2d at 1345 (quoting Mulligan v. Kemp, 771 F.2d 1436, 1443 (11th Cir. 1985)).  Based on that recognition, the Court held only that where, as here, counsel advises a defendant as to the benefits of seeking a continuance, and that defendant, against the advice of counsel, instructs his attorneys not to seek a continuance and insists upon proceeding to trial quickly based upon his belief that the State will be unable to prepare its case in time, the Court will not hear that defendant complain, literally decades later, that counsel's decision to abide by his wishes was professionally unreasonable. Prevatte, 459 F. Supp. 2d at 1345-46.  Thus, contrary to Petitioner's argument, it was not his pro se speedy trial demand that proved fatal to his ineffective assistance of counsel claim.  Instead, it was the Court's determination that it was not professionally unreasonable for counsel to abide by their clients' demand to proceed to trial when that demand is made with their advice and over their objection that precluded relief in this case. Nothing in Petitioner's Motion convinces the Court that it should depart from that holding.

     1.     Petitioner has not established Strickland prejudice

Even assuming that counsel's failure to seek a continuance fell outside the wide range of professionally competent assistance, that failure would not

entitle Petitioner to relief.  "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense."  Wiggins v. Smith, 539 U.S. 510, 521, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003); see Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The burden of establishing that counsel's deficient performance prejudiced the defense is a high one.  Sullivan v. DeLoach, 459 F.3d 1097, 1109 (11th Cir. 2006); Robinson v. Moore, 300 F.3d 1320, 1343-44 (11th Cir. 2002).  "Under the prejudice prong of Strickland, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Sullivan, 459 F.3d at 1109 (quoting Grayson v. Thompson, 257 F.3d 1194, 1225 (11th Cir. 2001)).  Rather, to establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

In his briefs to this Court, Petitioner points to three specific aspects of his trial which he claims flowed from counsel's failure to seek a continuance, and

which he claims establish prejudice under the second prong of <u>Strickland</u>.  In particular, Petitioner complains that counsel's failure to seek a continuance, and the resulting lack of time to prepare for trial, prevented them from (1) interviewing one of the State's witnesses, Ms. Linda Hamrick, (2) discovering and presenting evidence to support Petitioner's alibi defense, and (3) raising a challenge to the master jury list.  For the reasons that follow, the Court finds these three aspects of Petitioner's trial, both individually and cumulatively, insufficient to establish <u>Strickland</u> prejudice.

First and foremost, Petitioner claims that the failure to seek a continuance prevented counsel from interviewing Ms. Linda Hamrick, a witness for the State who testified on cross-examination that she had seen Petitioner and the victim at the same bar on the night the victim was killed.  (Br. in Supp. of Pet. for Writ of Habeas Corpus [11-2] at 58-61.)  Petitioner has not, however, pointed to any evidence in the record which would establish that counsel's decision not to seek a continuance was related to counsel's failure to interview Ms. Hamrick.  While it is certainly true that counsel had a limited time to prepare, and one might therefore speculate that counsel would have interviewed Ms. Hamrick if they had been afforded additional time, such speculation is

AO 72A
(Rev.8/82)

insufficient to satisfy Petitioner's burden in these proceedings.  In addition, as is discussed in detail below, when the Court considers Ms. Hamrick's testimony against the overwhelming evidence of Petitioner's guilt, it must conclude that her testimony, while certainly damaging, was not prejudicial within the meaning of <u>Strickland</u>.  As such, the failure to interview Ms. Hamrick cannot serve as a basis for relief.

Second, Petitioner contends that as a result of their failure to seek a continuance, counsel was prevented from investigating and presenting witnesses in support of Petitioner's alibi defense.  This ground for prejudice is unconvincing for two reasons.  As an initial matter, Petitioner's assertion that the failure to seek a continuance hampered his attorney's investigation into potential alibi witnesses is simply not supported by the record.  To the contrary, the record reveals that Petitioner's attorney, Mr. Bishop, relying on the information Petitioner provided, made efforts to seek out witnesses who could corroborate Petitioner's alibi.  As the Court explained in its Order denying relief:

> Mr. Bishop made at least one trip, and perhaps more, to the area [where Petitioner said he had been] in an effort to find witnesses to support Petitioner's alibi

> defense.  He obtained photographs of Petitioner and
> [his co-defendant], went to the location where
> Petitioner claimed to have been during the period in
> question, interviewed the manager of the
> establishment, waitresses, regular customers, as well
> as street vendors, store proprietors, and even two
> "beat cops," asking each if they had ever seen either
> defendant.  None had.

Prevatte, 459 F. Supp. 2d at 1347.  In short, despite Mr. Bishop's investigative

efforts, he was simply unable to locate a single witness who could offer support

for Petitioner's story.  While, these efforts may not have been as extensive as

Petitioner now desires, neither were they insubstantial.  On this record, the

Court declines to conclude that counsel's failure to seek a continuance

hampered their efforts to investigate Petitioner's alibi defense.

What is more, Petitioner has not demonstrated that counsel's failure to

investigate and to present additional witnesses in support of his alibi prejudiced

his defense.  Petitioner has presented no evidence which would indicate that

witnesses who could corroborate his alibi even exist, and Petitioner has offered

nothing more than pure speculation that additional time to investigate would

have resulted in the presentation of their testimony.  This falls far short of

satisfying Petitioner's burden in this case.

11

"To prove prejudice from a trial attorney's failure to investigate potential witnesses, a petitioner must show that the uncalled witnesses would have testified at trial and that their testimony would have probably changed the outcome of the trial."  Stewart v. Nix, 31 F.3d 741, 744 (8th Cir. 1994); Cross v. O'Leary, 896 F.2d 1099, 1100 (7th Cir. 1990) ("speculation about what unidentified persons might have said cannot establish the 'prejudice' that, under Strickland v. Washington, is part of the petitioner's burden." (citation omitted)); Dell v. Straub, 194 F. Supp. 2d 629, 650 (E.D. Mich. 2002) ("Defense counsel's failure to investigate, interview, or present alibi witnesses does not amount to the ineffective assistance of counsel, because petitioner has failed to identify these witnesses, indicate their availability, or specify the content of their testimony.").

In this case, Petitioner offers only speculation that a continuance would have allowed for additional investigation which, in turn, would have produced corroborative testimony of sufficient value to undermine confidence in the outcome of his trial.  He has not identified the corroborating witnesses who would have been discovered through further investigation, demonstrated that they would have been available to testify at his trial, or established the content

of the testimony they would have given.  Because Petitioner has failed to make

such a showing, he has not established that he was prejudiced by counsel's

failure to further investigate his alibi defense.[1]

Finally, Petitioner argues that the failure to seek a continuance prevented

counsel from investigating and raising a challenge to the master jury list based

upon the underrepresentation of women.  As the Court explained in its prior

Order, neither Taylor v. Louisiana, 419 U.S. 522, 95 S. Ct. 692, 42 L. Ed. 2d

690 (1975) nor Duren v. Missouri, 439 U.S. 357, 99 S. Ct. 664, 58 L. Ed. 2d

579 (1979) had been decided at the time of Petitioner's trial.  In the Eleventh

Circuit, there is a virtual "wall of binding precedent that shuts out any

contention that an attorney's failure to anticipate a change in the law constitutes

ineffective assistance of counsel."  United States v. Ardley, 273 F.3d 991, 993

(11th Cir. 2001) (Carnes, J. concurring in the denial of rehearing en banc).

---

[1] The Court recognizes that it may be exceedingly difficult, decades later, to locate witnesses and to establish with any degree of certainty that they would have given testimony favorable to Petitioner had they been identified and called at trial.  But, that is Petitioner's burden nonetheless. See Cross, 896 F.2d at 1101 (acknowledging that "it is hard to reconstruct after a decade what might have been," but stating that "this is the [petitioner's] burden.").

Therefore, the fact that such a challenge was not mounted cannot, in and of itself, serve as the basis for an ineffective assistance claim.

Petitioner's attempt to bootstrap counsel's failure to challenge the master jury list by casting it as a challenge to their decision not to seek a continuance is equally unpersuasive. As explained above, to establish prejudice Petitioner must show that <u>but for</u> counsel's unprofessional conduct, there is a reasonable probability that the result of the proceedings would have been different. Yet, Petitioner has not established any causal relationship between counsel's decision not to seek a continuance (which Petitioner contends was professionally deficient) and counsel's failure to challenge the master jury list. Indeed, Petitioner has pointed to no evidence in the record showing that, at the time of Petitioner's trial, counsel was even aware that such a challenge could be mounted, that counsel ever considered such a challenge in Petitioner's case, that counsel was unable to bring such a challenge on Petitioner's behalf because a continuance was not sought,[2] or that such a challenge would have been

---

[2] Indeed, Mr. Bishop's testimony before the state habeas court was to the contrary. He testified that at the time of Petitioner's trial, it was his assumption that the jury pool was not impermissibly constituted. (<u>See</u> R. Ex. 5 at 88-89.) It was after Petitioner's trial and appeal that he attended a seminar where jury composition issues were discussed, and it was only at that point that he considered mounting such a challenge to the Gwinnett

meritorious under existing precedent.  In the absence of such evidence,

Petitioner cannot establish that counsel's failure to seek a continuance resulted

in their failure to challenge the underrepresentation of women on his jury

venire, or that he suffered any prejudice as a result.  Accordingly, the failure to

challenge the underrepresentation of women on the jury venire cannot serve as a

basis for the Court to conclude that Petitioner was prejudiced by counsel's

failure to seek a continuance.

In conclusion, there can be little doubt that counsel had limited time to

prepare for Petitioner's trial.  Nevertheless, after considering each of these

asserted bases for prejudice, the Court concludes that they fail to establish,

either individually or cumulatively, that Petitioner suffered prejudice under

<u>Strickland</u> as a result of his attorneys' decision not to seek a continuance.

### B.    Failure to Interview Linda Hamrick

In his second ground for reconsideration, Petitioner challenges the

Court's conclusion that the failure to interview Ms. Hamrick was neither

objectively unreasonable nor prejudicial.  (Motion at 7-11.)  In challenging the

Court's conclusion, Petitioner raises two related arguments.  First, Petitioner

_____

County master jury list.  (<u>See</u> <u>id.</u> at 89-90.)

contends that under the Supreme Court's decision in <u>Rompilla v. Beard</u>, 545 U.S. 374, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005), Petitioner's counsel had a duty to interview each and every witness who would testify against him, and that the failure to do so constitutes ineffective assistance.  In a second argument, which also relies heavily on <u>Rompilla</u>, Petitioner asserts that the standards for counsel's performance set forth in the 2003 American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (the "2003 Guidelines") are applicable to Petitioner's 1974 trial, and that application of those standards mandates a finding of ineffective assistance.  For the reasons that follow, the Court disagrees with both of Petitioner's arguments in support of reconsideration, as well as Petitioner's implicit assumption that Ms. Hamrick's testimony was prejudicial under the second prong of <u>Strickland</u>.

1.   <u>Rompilla does not require a different result</u>

Petitioner argues that <u>Rompilla</u> establishes a per se rule that defense counsel must interview each and every witness who will testify against the defendant in a criminal case.  (<u>See</u> Motion at 10 (citing <u>Rompilla</u> for

16

proposition that "counsel had a duty to interview all witnesses who they knew were prepared to testify against their client").)  The Court disagrees.

In Rompilla—a case which examines the "norms of adequate investigation in preparing for the sentencing phase of a capital trial, when defense counsel's job is to counter the State's evidence of aggravated culpability with evidence in mitigation"—the Supreme Court held that counsel was ineffective for failing to investigate and examine the court file from the defendant's prior conviction.  The failing in that case was obvious: Rompilla's attorney knew that the state intended to seek the death penalty by proving that he had a significant history of violent felony convictions, and that the state would attempt to establish that criminal history by proving his prior conviction for rape and assault.  Rompilla's attorney also knew that the state planned to emphasize his violent character by introducing a transcript of the rape victim's testimony from the earlier trial.  Id. at 383.  Despite that knowledge, and despite the fact that the prior conviction file was readily accessible,[3] defense counsel inexplicably failed to review that file.  Counsel's failings did not end there.

_____

[3] The file from Rompilla's previous trial on which the state intended to rely was available in the very same courthouse where his trial was being conducted.

17

After being again informed just one day prior to the sentencing hearing that the state intended to rely on the prior conviction file, and after obtaining a copy of the very transcript the state intended to present in aggravation, counsel failed to review either the transcript or examine the contents of the file.[4] Id. at 383-84.

Not surprisingly, the Supreme Court held that counsel's failure to review Rompilla's file fell below the level of reasonable performance. As the Court rightly pointed out,

> it is difficult to see how counsel could have failed to realize that without examining the readily available file they were seriously compromising their opportunity to respond to a case for aggravation. The prosecution was going to use the dramatic facts of a similar prior offense, and Rompilla's counsel had a duty to make all reasonable efforts to learn what they could about the offense. Reasonable efforts certainly included obtaining the Commonwealth's own readily available file on the prior conviction to learn what the Commonwealth knew about the crime, to discover any mitigating evidence the Commonwealth would downplay, and to anticipate the details of the aggravating evidence the Commonwealth would emphasize. Without making reasonable efforts to review the file, defense counsel could have had no hope of knowing whether the prosecution was quoting selectively from the transcript, or whether there were

---

[4] It was undisputed that the failure to examine the prior conviction file was prejudicial under the second prong of Strickland.

circumstances extenuating the behavior described by
the victim.

Id. at 385-86.

Petitioner asserts that Rompilla establishes a per se rule that counsel who
elects to forego interviewing a particular witness necessarily provides
ineffective assistance.  But, Petitioner's reading of that case cannot be squared
with the flexible, reasonableness-under-the-circumstances approach the
Supreme Court has adopted for assessing the adequacy of representation.  See,
e.g., Roe v. Flores-Ortega, 528 U.S. 470, 479, 120 S. Ct. 1029, 145 L. Ed. 2d
985 (2000) (noting that Strickland "reject[ed] mechanistic rules governing what
counsel must do").  Indeed, the Supreme Court in Rompilla itself recognized
that "[a] standard of reasonableness applied as if one stood in counsel's shoes
spawns few hard-edged rules."  Rompilla, 545 U.S. at 381.  And the Court has
repeatedly made clear that "a particular decision not to investigate must be
directly assessed for *reasonableness in all the circumstances*," Strickland, 466
U.S. at 690-691 (emphasis added), "which includes a context-dependent
consideration of the challenged conduct as seen 'from counsel's perspective at
the time.' " Wiggins v. Smith, 539 U.S. 510, 523, 123 S. Ct. 2527, 156 L. Ed.

2d 471 (2003) (quoting Strickland, 466 U.S. at 689); see also Strickland, 466

U.S. at 689 ("There are countless ways to provide effective assistance in any

given case.  Even the best criminal defense attorneys would not defend a

particular client in the same way.").  Because Petitioner's view of Rompilla is

incompatible with the numerous Supreme Court authorities applying Strickland,

the Court cannot accept Petitioner's argument that it establishes an absolute

requirement that defense counsel spend trial preparation time interviewing each

and every witness.  Rather, the Court views Rompilla as merely highlighting

defense counsel's obligation to make reasonable efforts under the circumstances

to investigate and examine that evidence which lies at the core of the

prosecution's case against their client, and which the attorney knows or

reasonably should know that prosecution will rely upon in either the guilt or

sentencing phase of a capital trial.  This is so for the simple reason that, by

failing to obtain and examine that core evidence which the state will rely upon

to establish their client's guilt or to condemn their client to death, defense

counsel cannot devise a strategy to meet that evidence and subject the

prosecution's case to the meaningful adversarial testing which the Constitution

requires.

20

Applying that standard to the facts of this case, making "every effort . . . to eliminate the distorting effects of hindsight," <u>Strickland</u>, 466 U.S. at 689, and "giving a 'heavy measure of deference to counsel's judgments,' " <u>Rompilla</u>, 545 U.S. at 381 (quoting <u>Strickland</u>, 466 U.S. at 691), the Court is unconvinced that the state habeas court's resolution of Petitioner's ineffective assistance of counsel claim was objectively unreasonable.  As the Court previously explained, through their pretrial investigation, which included a complete review of the prosecution's file and detailed conversations with the district attorney, defense counsel was well-aware of the testimony Ms. Hamrick would give when called on the State's behalf.  They knew that she was prepared to (and did) testify that the victim had been in the bar where she worked on the evening that he was killed.  Armed with that knowledge, defense counsel had to determine whether they should allocate their limited pretrial preparation time to further investigating Ms. Hamrick's testimony by conducting an in-person, pretrial interview.  In the Court's view, reasonable attorneys could conclude that their time would be better spent preparing other aspects of the defense.

Ms. Hamrick's testimony, as understood by Petitioner's attorneys in the days leading up to trial and as presented by the State, was simply not that

21

damaging to Petitioner's defense.  In their numerous interviews with Petitioner, he never indicated that he had been present near Ms. Hamrick's place of employment.  Instead, he was unwavering in his assertions that he had stolen the victim's car on Peachtree Street, far from that location.  Based on that information, and considering the other evidence against their client, Petitioner's attorneys prepared an alibi defense which, critically, was not significantly undermined by the victim's presence at the bar where Ms. Hamrick worked.  Thus, Ms. Hamrick was, at most, a minor witness for the State whose testimony did little to undermine Petitioner's defense.[5]

The Constitution does not require defense counsel to interview each and every witness that is prepared to testify at trial, irrespective of the importance of that witness's testimony against their client, and irrespective of whether that witness will testify as to a contested matter.  Rather, the Constitution requires defense counsel to make investigations which are reasonable under the circumstances.  See Flores-Ortega, 528 U.S. at 479 ("we have held that the Federal Constitution imposes one general requirement: that counsel make

---

[5] Petitioner concedes as much.  (See Br. in Supp. of Pet. for Writ of Habeas Corpus [11-4] at 53 (stating that Ms. Hamrick's testimony on direct "failed to elicit any inculpatory information").

objectively reasonable choices").  Where, as in <u>Rompilla</u>, defense counsel

knows that the state intends to present highly damaging information and that

information is readily accessible, an objectively reasonable investigation entails,

at a minimum, obtaining the information in the state's possession and

examining it for ways to either rebut it or at least mitigate its effects.  But

where, as here, defense counsel reasonably believes that they know the content

of a witness's testimony, and that witness will testify as to matters which do not

significantly undermine the defense asserted, it may be reasonable for counsel

to "forego interviewing that witness in favor of taking up other, more beneficial

aspects of the defense." <u>Prevatte</u>, 459 F. Supp. 2d at 1347; <u>see also</u> <u>Mulligan v.

Kemp</u>, 771 F.2d 1436, 1442-44 (explaining that although it "would have been

wiser" to interview each of state's witnesses, counsel did not perform

ineffectively by failing to conduct interviews where defense counsel assumed

from discussions with prosecutor that he knew substance of their testimony).

The decision to forego such an interview may be made even more reasonable

where, as in this case, the time to prepare is constrained and there is a wealth of

other, highly damaging evidence with which counsel must contend.

In sum, <u>Rompilla</u> does not establish a bright line rule that defense attorneys must interview each and every witness who will testify for the state at trial.  Here, when viewed from defense counsel's perspective at the time of trial, Ms. Hamrick was a minor witness whose testimony in the State's case against Petitioner did little to undermine his alibi defense.  While, in hindsight, an interview *might* have prevented counsel from eliciting the testimony in question,[6] the Court cannot say that the state habeas court's conclusion that defense counsel did not perform ineffectively for failing to conduct that interview was objectively unreasonable in light of existing Supreme Court precedent.  As such, the Court declines to reconsider its prior judgment denying relief on this ground.

    2.    <u>The ABA Guidelines do not mandate a finding of ineffective assistance</u>

---

[6] Again, the Court notes that despite the State's interviews with Ms. Hamrick, this information was apparently not reflected in the prosecution's file and not elicited during the State's direct examination.  Thus, it is at best unclear whether the State was even aware that Ms. Hamrick could identify Petitioner.  It is similarly unclear, therefore, that Ms. Hamrick would have conveyed this information to defense counsel—assuming of course that she would agree to meet with them in the first instance—had they elected to interview her prior to her taking the stand.  Nevertheless, putting these uncertainties aside, the Court assumes for purposes of this Order that defense counsel would have obtained this information through a pretrial interview.

24

Petitioner asserts that 2003 Guidelines,[7] issued some twenty years after his trial and conviction, establish that his attorneys acted deficiently in failing to interview Ms. Hamrick.  The Court finds this argument unpersuasive for a number of reasons.

First, the Court does not agree that <u>Rompilla</u> requires the Court to apply the 2003 Guidelines in assessing whether, in 1974, Petitioner's attorneys provided constitutionally adequate assistance.  Contrary to Petitioner's argument, the Supreme Court in <u>Rompilla</u> did not rely on the 2003 Guidelines in concluding that defense counsel conducted an inadequate investigation in 1989.  Rather, in assessing the adequacy of counsel's investigation in that case, the Supreme Court relied upon the 1982 ABA Standards for Criminal Justice which were in effect at the time of Rompilla's trial.  <u>See</u> <u>Rompilla</u>, 545 U.S. at 387 (quoting 1 ABA Standards for Criminal Justice 4-4.1 (2d ed. 1982 Supp.)).

---

[7] The 2003 Guidelines provide:

> Barring exceptional circumstances, counsel should seek out and interview potential witnesses, including, but not limited to . . . eyewitnesses or other witnesses having purported knowledge of events surrounding the alleged offense itself.

ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases 10.7 cmt.  (Rev. ed. 2003).

While the Court did make reference to later-promulgated versions of the guidelines, the Court viewed those guidelines as simply more explicit statements of the pronouncements contained in 1982 guidelines.  Id. at 387 n.6 (noting that the Court saw "no material difference" between the phrasing of 1982 and 1993 versions of ABA guidelines); id. at 387 n.7 (noting that 1989 version of ABA guidelines, promulgated shortly after Rompilla's trial, "applied the clear requirements for investigation set forth in the earlier [1982] Standards to death penalty cases," and that 2003 Guidelines "are even more explicit"). Thus, the Supreme Court in Rompilla did not rely on ABA guidelines promulgated years after the defendant's trial to assess his attorney's performance, and the Court is not required to so in this case.[8]

Second, even assuming that the Court were required to consider the 2003 Guidelines, it would not reconsider its prior judgment.  While the Supreme Court has recognized that "[p]revailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable," Strickland, 466 U.S. at 688; see also Wiggins v. Smith, 539

---

[8] Petitioner has not pointed to any similar guidelines in existence at the time of his trial.

U.S. 510, 524, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003) (finding that trial

counsel's conduct "fell short" of the standards set forth in the ABA Guidelines),

the Supreme Court has emphasized that

> they are only guides.  No particular set of detailed
> rules for counsel's conduct can satisfactorily take
> account of the variety of circumstances faced by
> defense counsel or the range of legitimate decisions
> regarding how best to represent a criminal defendant.
> Any such set of rules would interfere with the
> constitutionally protected independence of counsel
> and restrict the wide latitude counsel must have in
> making tactical decisions.

Strickland, 466 U.S. at 688-89; see also Flores-Ortega, 528 U.S. at 479

("'[p]revailing norms of practice as reflected in American Bar Association

standards and the like ... are only guides,' and imposing 'specific guidelines' on

counsel is 'not appropriate.' " (quoting Strickland, 466 U.S. at 688)); Dill v.

Allen, __ F.3d __, 2007 WL 1695151 at *11 n.48 (11th Cir. June 13, 2007)

(recognizing that "the Supreme Court has not made [the ABA guidelines] the

law of the land" and declining to adopt 2003 Guidelines as standard for

reasonableness).

In this case, the state habeas court reviewed counsel's decision not to

interview Ms. Hamrick and found that Petitioner's attorneys did not render

ineffective assistance.  This Court has considered Petitioner's various arguments and has concluded, as discussed above, that the state court's determination of that claim was not objectively unreasonable.  Nothing presented here, and in particular the pronouncements of the American Bar Association issued some twenty years after Petitioner's trial, convince the Court that its prior conclusion was erroneous.  Accordingly, the Court declines to reconsider its prior judgment on this ground.

3.   Petitioner has not established Strickland prejudice

Finally, even assuming that counsel performed deficiently by failing to interview Ms. Hamrick, that failure did not prejudice the defense within the meaning of Strickland.  The Court has thoroughly reviewed the record in this case, and the Court has little doubt that Ms. Hamrick's testimony was, to put it mildly, not helpful to the defense.  As the Court discussed in its Order denying relief, her testimony on cross-examination placed Petitioner in the same bar as the victim on the very night he was killed and miles from where Petitioner claimed to have stolen the victim's car.  Certainly, that testimony was damaging to Petitioner's case.  But, the prejudice prong of Strickland requires Petitioner to do more than establish that Ms. Hamrick's testimony was damaging to his

case.  Instead, he must establish that but for her testimony, there is a reasonable

probability that the outcome of his trial would have been different.  This,

Petitioner cannot do.

As the Court discussed in its Order denying Petitioner relief, the evidence

presented against him was simply overwhelming.

> Petitioner and [his co-defendant] were arrested in
> North Carolina less than 24 hours after the victim was
> killed.  At the time they were arrested, they were
> driving the victim's car.  During a high-speed police
> chase leading up to their eventual capture which
> included an exchange of gunfire with the pursuing
> officers, a shotgun was tossed from the vehicle.  This
> was the same type of weapon used to kill the victim.
> The shotgun shells found in their possession were of
> the exact brand and type as that discovered at the
> scene of the killing, and the state's expert testified that
> the shell found at the scene had been fired from the
> shotgun in Petitioner's possession.  Petitioner and
> Jordan had in their possession the victim's wallet and
> briefcase, and Jordan was wearing the victim's watch.
> There were photographs of Petitioner and Jordan
> standing in front of the victim's car holding various
> weapons, including a shotgun, which Petitioner and
> Jordan explained as "just clowning around" and as a
> "souvenir."

Prevatte, 459 F. Supp. 2d at 1378-79.  In the face of that and other evidence

presented at Petitioner's trial, Ms. Hamrick's testimony placing Petitioner, his

29

co-defendant, and the victim at the same bar was simply not prejudicial within the meaning of Strickland.

In short, Ms. Hamrick's testimony was certainly damaging to the defense. While that testimony undoubtedly had the effect of making a strong case stronger, the Court concludes that, in light of the voluminous other evidence tending to prove Petitioner's guilt, her testimony is not sufficient to undermine confidence in the outcome of Petitioner's trial.  As such, Petitioner cannot establish prejudice under the second prong of Strickland based upon counsel's failure to interview Ms. Hamrick.

## III.   **Brady Claim**

In his final argument, Petitioner takes issue with the Court's conclusion that the State's failure to produce certain motel receipts does not entitle him to relief under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).  In this respect, Petitioner argues that the Court significantly underestimated the exculpatory value of these receipts because, according to Petitioner, they could have been used to undermine Ms. Hamrick's testimony placing both Petitioner and the victim at the same bar on the night of his murder.  (Mot. at 12-13.)

AO 72A
(Rev.8/82)

Under <u>Brady</u>, suppressed evidence is not material merely because it may have had some impeachment value.  To the contrary, "[s]uppressed evidence is material when 'there is a reasonable probability that . . . the result of the proceeding would have been different' had the evidence been available to the defense." <u>Stano v. Dugger</u>, 901 F.2d 898, 899 (11th Cir. 1990) (quoting <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 57, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987)); <u>see also</u> <u>Strickler v. Greene</u>, 527 U.S. 263, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999) ("The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.").

In this case, Ms. Hamrick's testimony was not the only evidence linking him to the murder.  Far from it.  Indeed, as the Court has previously explained, the evidence of Petitioner's guilt was simply overwhelming.  In view of that overwhelming evidence of guilt, there is not a reasonable probability that the result of the proceeding would have been different had the motel receipts been available to the defense.  As such, the Court reaffirms its conclusion that the

AO 72A
(Rev.8/82)

motel receipts were not material under <u>Brady</u> and its progeny, and thus, declines to alter its prior judgment as it relates to this issue.

### Conclusion

For the reasons stated herein, Petitioner's First Motion to Alter or Amend the Judgment [41] is **DENIED**.

**SO ORDERED** this  24th  day of July, 2007.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

32